UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LEVAR JACKSON, | ) |
| Plaintiff, | ) Civil Action No. 5: 15-095-DCR |
| V. | ) |
| LT. FARMER, et al., | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Levar Jackson filed this action while he was in custody of the Kentucky Department of Corrections ("KDOC") and living in a half-way house located in Louisville, Kentucky.[1] Proceeding *pro se*, Jackson filed a complaint under 42 U.S.C. § 1983, alleging that defendants Lieutenant Farmer, Sergeant Frederick, Captain Simpson, and J. Jones, all jail officials at the Fayette County Detention Center ("FCDC") in Lexington, Kentucky, violated his federal constitutional rights. [Record No. 1]  Jackson seeks compensatory damages of no less than $2,000,000.00 and other relief. [*Id.*, p. 31]

Because Jackson is proceeding *in forma pauperis*, the Court conducts a preliminary review of his Complaint. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a).  The Court liberally

---

1   It appears that Jackson may have been released from the half-way house and is no longer in custody. The Kentucky Department of Corrections' website reflects that no person by the name of Levar Jackson is presently in custody of the KDOC.  *See* Kentucky Department of Corrections, *Kentucky Online Offender Look-up*, *available at* http://kool.corrections.ky.gov/?sortOrder= (last visited Aug. 27, 2015). Jackson has not provided the Court with his current mailing address.

construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555−56 (2007)). As explained below, the Court will dismiss Jackson's constitutional claims because they are time-barred.

## I.

The primary focus of Jackson's Complaint concerns his belief that June Harris, also known as June Williams,[2] placed a contract on his life. Jackson does not state when this contract commenced, but he states that it gave him problems at four other jails in Kentucky prior to his confinement at the FCDC.[3]  [Record No. 1, pp. 11−12]  These jails were located in the following counties: Daviess, Russell, Fulton, and Woodford.  [*Id.*]  The plaintiff implies that some officials at these county jails had knowledge of the contract and were involved in a conspiracy to assist in its execution.  [*Id.*]

Jackson states that on or about July 13, 2013, when he was booked into the FCDC, he informed the defendants and several other jail officials that he feared for his life due to the June Harris contract and the problems he had experienced at the four prior jails. For this reason, Jackson states that he requested to be placed in Protective Custody ("PC") at FCDC. [Record No. 1, pg. 16]  The defendants declined to place Jackson in PC because: (i) they were unable to verify his "contract" story in communicating with officials at the prior four

---

2    Jackson provides no details regarding the reasons why June Harris, who appears to be a private citizen and not a state actor, allegedly wants to have him murdered.

3    Jackson states that he was housed in the FCDC from July 12, 2013 until April 14, 2014. [Record No. 1, p. 2]

jails; and (ii) he had signed a waiver upon being booked into the FCDC stating that he had no need to be placed in PC. [*Id.*, p. 17]  The plaintiff claims that the defendants intended to force him into the general population where he could be killed. [*Id.*, pp. 27–28]  On this premise, Jackson argues that the defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment. U.S. CONST. amend. VIII.

Jackson's other Eighth Amendment claim concerns his allegation that his food tray was tampered with on more than one occasion and that Officer Alexander made some "spitting gestures" as though Alexamder was spitting in his food tray. [Record No. 1-1, p. 38]  Jackson also asserts a First Amendment claim, U.S. CONST. amend. I, alleging that he had received two "legal mail" envelopes that were opened outside his presence.[4] [*Id.*, p. 36]

## II.

A.   **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to make exhaustion of administrative remedies mandatory for prisoners making claims about the conditions of their confinement. The statute now provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (1995).

---

4   The exhibits attached to Jackson's Complaint reflect that he filed his grievance concerning spit being in his food on September 16, 2013, and that he filed the grievance concerning the opening of his "legal mail" on March 4, 2014. [Record No. 1-1, pp. 36, 38]

The language of §1997e(a) expressly requires exhaustion of administrative remedies before an inmate-plaintiff may bring a civil action or appeal, even if the administrative process does not make provision for the specific relief requested by the plaintiff. *Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA statute also requires the *proper* exhaustion of the administrative remedy process at issue. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . " *Id.* at 90. Discussing the purposes of exhaustion, the Supreme Court stressed that the benefits of exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

Jackson acknowledges that he did not appeal the grievances he filed concerning food tampering claims and the alleged opening of his legal mail. Jackson states that he did not appeal because he was told by inmate services that his grievances were complaints against officers so they could not be appealed. [Record No. 1, p. 6] Assuming the truthfulness of Jackson's statement, it is clear from the Complaint that Jackson did not attempt to exhaust his administrative remedies because jail officials told him that his grievances were not appealable.

- 4 -

Under certain circumstances, the exhaustion requirement may be subject to waiver, estoppel, or equitable tolling. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (overruled by implication on other grounds)). Courts must afford an inmate an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement. *Johnson,* 261 F. App'x at 755. For instance, the failure to exhaust may be excused when prison officials interfere with a prisoner's pursuit of an administrative remedy. *Id.* (referencing *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir.1982)); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2nd Cir. 2004). However, exceptions to administrative exhaustion requirements apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994) (examining administrative exhaustion requirement under habeas law, which requires even less stringent exhaustion than § 1997e). Assuming jail officials told Jackson that his grievances were not appealable and that he relied on that advice to his detriment, this situation presents "extraordinary circumstances" that may excuse Jackson from the exhaustion requirement.[1]

### B.   Statute of Limitations

Excusing Jackson from the exhaustion requirement, the Court has further considered his constitutional claims brought under the First and Eighth Amendments and concludes that they should be dismissed because they are barred by the applicable one-year statute of limitations. Because 42 U.S.C. § 1983 does not provide its own statute of limitations, federal

---

1   The Court notes that Jackson's reliance on the advice of jail officials may not excuse him from the exhaustion requirement; however, the Court has resolved to continue with the analysis for Jackson's benefit.

courts "borrow" the applicable limitations period from the state where the events occurred. *Owens v. Okure*, 488 U.S. 235, 239 (1989).  For constitutional torts committed in Kentucky, the one-year limitations period under KY. REV. STAT. § 413.140(1)(a) for bringing general personal injury actions applies.  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 181–82 (6th Cir. 1990).

Federal law governs when the statute of limitations begins to run.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  A cause of action accrues when "the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred."  *Collyer*, 98 F.3d at 220; *see also Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *Sevier*, 742 F.2d at 273.

### 1. Eighth Amendment Claims

#### i. Failure to Protect; Safety and Security Needs

Jackson states that when he was booked into the FCDC in July of 2013, the defendants failed to place him in PC at his request, which violated the Eighth Amendment. The series of events concerning Jackson's location in the FCDC, ranging from his placement: (i) in isolation; (ii) with the general population; and (iii) eventually in PC, occurred over a period from July to October 2013.  [Record No. 1, p. 3, 27]  Thus, it is clear from Jackson's Complaint that his claim of an Eighth Amendment violation accrued, at the latest, "around October 2013."  [Record No. 1, p. 3]  By the end of October of 2013, Jackson either knew or should have known that his Eighth Amendment rights had been violated.

To satisfy Kentucky's one-year statute of limitations, Jackson should have filed a § 1983 action alleging this Eighth Amendment violation no later than November 1, 2014.

However, Jackson did not file his Complaint until April 6, 2015, more than six months after the one-year statute of limitations had expired. Therefore, the face of Jackson's Complaint clearly demonstrates that his Eighth Amendment failure-to-protect action is barred by Kentucky's one-year statute of limitations. A district court is permitted to raise a limitations bar *sua sponte* when the defect is "obvious from the face of the complaint." *Alston v. Tenn. Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) (citing *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1995)).

### ii. Food Tampering

On September 15, 2013, Jackson filed a grievance and a complaint at the FCDC claiming that Officer Alexander was tampering with his food. Specifically, he claimed that he "was getting something looking like spit and hair in my tray every meal." [Record No. 1-1, pp. 34, 38] On September 23 and 24, 2013, respectively, FCDC jail officials responded to Jackson's complaint and grievance, concluding that the claims were unfounded. [*Id.*, pp. 35, 39] Jackson did not appeal.

To satisfy Kentucky's one-year statute of limitations applicable to § 1983 actions, Jackson should have filed a § 1983 action alleging this constitutional rights violation no later than September 25, 2014. Again, however, Jackson did not file his Complaint until April 6, 2015, more than six months after the one-year statute of limitations had expired. Thus, the face of Jackson's Complaint plainly demonstrates that his food tampering action is barred by Kentucky's one-year statute of limitations. And as noted above, a district court is permitted to raise a limitations bar *sua sponte* when the defect is "obvious from the face of the complaint." *Alston*, 28 F. App'x at 476.

### B. First Amendment Claim

On March 1, 2014, Jackson filed a grievance at the FCDC concerning the opening of his legal mail. He claimed that he had received two envelopes marked "special opening" that had been opened outside of his presence by persons unknown to him prior to his receipt. [Record No. 1-1, p. 36] On March 7, 2014, Officer West responded to Jackson's grievance, finding that it contained insufficient information. [*Id.*, p. 37] For appeal purposes, Jackson was provided with a copy of the jail's response. [*Id.*] Jackson did not appeal.

Jackson should have filed a § 1983 action alleging this constitutional rights violation no later than March 8, 2015, one year after the FCDC's response that his grievance contained insufficient information. However, Jackson did not file this § 1983 complaint until April 6, 2015, nearly one month after the one-year statute of limitations had expired. Thus, the face of Jackson's Complaint also demonstrates that his First Amendment claim is barred by Kentucky's one-year statute of limitations. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Levar Jackson's Complaint [Record No. 1], filed under 42 U.S.C. § 1983, is **DISMISSED** because all claims raised therein are time-barred.

2. This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

3. A corresponding Judgment will be entered this date.

This 3rd day of September, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge